UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

December 29, 2016

MEMORANDUM TO PARTIES RE:     Stephen Galvagna v. Bank of America, NA, et al.
                                                              Civil Action No. GLR-16-1696

Dear Parties:

Pending before the Court are Defendants', Bank of America, NA and Nationstar Mortgage,[1] Motion to Dismiss (ECF No. 5) and pro se Plaintiff Stephen Galvagna's Motion for Summary Judgment (ECF No. 13). The Motions are fully briefed and ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court will grant Defendants' Motion and deny Galvagna's Motion as moot.

In early 2007, Galvagna borrowed $424,000 from Countrywide Bank, N.A. to purchase a second home at 3950 Coulbourn Mill Road, Salisbury, Maryland (the "Property"). (ECF No. 5-2). Galvagna executed a promissory note in favor of Countrywide that was secured by a deed of trust on the Property. (ECF Nos. 5-2, 5-3). In September 2009, Galvagna signed a Loan Modification Agreement with Bank of America.[2] (ECF No. 1-1). Nevertheless, in November 2009—just two months later—Bank of America, through substitute trustees, executed a foreclosure sale of the Property. (ECF No. 1-2). In March 2010, however, the substitute trustees worked to vacate the foreclosure, moving the Circuit Court for Wicomico County, Maryland to strike the Final Order of Ratification of Sale that the court had entered. (ECF No. 1-3). That same month, the court struck the Final Order of Ratification of Sale and dismissed the foreclosure proceeding against Galvagna. (Id.).

In September 2012, Bank of America approved Galvagna for a Trial Period Plan ("TPP") under which Galvagna was required to make reduced mortgage payments in November and December 2012 and January 2013. (ECF No. 1-4). In October 2012, Galvagna wrote a letter to Bank of America, refusing the TPP and requesting a "better modification plan" and a 2% interest rate. (Id. at 5). Galvagna does not allege whether he made the TPP payments or whether Bank of America responded to his letter with a counteroffer. In June 2013, Bank of America advised Galvagna that it would transfer the servicing of his loan to Nationstar, effective July 2013. (ECF No. 1-5). Although Galvagna does not specify when, it appears that sometime in 2014, Bank of America or Nationstar attempted to execute another foreclosure against the Property.[3] (See ECF No. 1-6).

---

[1] Defendants note that Nationstar's correct legal identity is "Nationstar Mortgage, LLC." The Court will direct the Clerk to update the case caption accordingly.

[2] The Court surmises that Bank of America purchased Countrywide and assumed its accounts receivable and other assets. While ascertaining the relationship between Countrywide and Bank of America is not necessary to resolve the pending motions, the Court makes this note for the purpose of presenting a clear statement of facts.

[3] The Court drew the foregoing facts from the Complaint, documents attached to the Complaint, and documents Defendants attach to their Motion to Dismiss that are integral to and explicitly relied on in the Complaint and that the Galvagna does not challenge as inauthentic. See Sec'y of State For Defence v.

Galvagna sued the Defendants in this Court on May 27, 2016.  (ECF No. 1).  He seeks $489,000 in compensatory damages and $2 million in punitive damages.[4]  (Id.).  On July 29, 2016, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 5).  Galvagna responded in opposition on August 24, 2016 (ECF No. 11), and Defendants replied on September 12, 2016 (ECF No. 12).  While Defendants' Motion to Dismiss was still pending, Galvagna filed a two-page Motion for Summary Judgment (ECF No. 13); it was fully briefed as of October 21, 2016 (ECF Nos. 14, 15).

**<u>Defendants' Motion to Dismiss</u>**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)).  A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Because Galvagna's Complaint includes allegations of fraud, the complaint is also subject to Rule 9(b), which requires that "the circumstances constituting fraud" be stated "with particularity."  The "circumstances constituting fraud" include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what was obtained thereby."  Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc., 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (quoting Windsor Assocs. v. Greenfeld, 564 F.Supp. 273, 280 (D.Md. 1983)).  The particularity requirements of Rule 9(b) apply to pro

---

Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

[4] Galvagna's claim for punitive damages fails as a matter of law because either punitive damages are not available or Galvagna does not allege facts from which the Court could reasonably infer Defendants acted with actual malice.  See Biktasheva v. Red Square Sports, Inc., 366 F.Supp.2d 289, 295 (D.Md. 2005) ("In Maryland, punitive damages are not available in a pure action for breach of contract, even if the breach is malicious." (citation omitted)); see id. ("In a tort action, a plaintiff must prove that a defendant had actual malice in order to obtain punitive damages." (citation omitted)).

se complaints. Coulibaly v. J.P. Morgan Chase Bank, N.A., No. DKC-10-3517, 2011 WL 3476994, at *19 n.23 (D.Md. Aug. 8, 2011)

 Since Galvagna is acting pro se, the Court will construe his Complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).  Indeed, pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB–12–969, 2012 WL 6087491, at *3 (D.Md. Dec.4, 2012) (citation omitted).  Furthermore, "[t]he Court cannot act as a pro se litigant's 'advocate and develop, sua sponte, statutory and constitutional claims' that the litigant failed to raise on the face of the complaint." Branch v. Machen, No. 3:14CV708, 2014 WL 6685497, at *2 (E.D.Va. Nov. 25, 2014) (quoting Newkirk v. Circuit Ct. of Hampton, No. 3:14cv372–HEH, 2014 WL 4072212, at *1 (E.D.Va. Aug. 14, 2014)).

 As an initial matter, the Court observes that Galvagna's Complaint is not a model of clarity and the vast majority of his allegations epitomize the vague, conclusory allegations that do not pass muster under the plausibility standard set forth in Iqbal and Twombly.  Nonetheless, after affording Galvagna's Complaint the most generous construction, the Court discerns that Galvagna attempts to raise several common law claims.[5] Galvagna first avers that Bank of America entered into a settlement agreement (the "Agreement") with the United States Department of Justice ("DOJ") that "clearly states that mortgage servicing can not [sic] be sold [or] transferred unless the new service company is willing to accept the pending modification, and [the pending modification] is within 60 days of completion." (Compl. ¶ 1).  Galvagna maintains Bank of America breached this agreement when it transferred the servicing of his loan to Nationstar, who "refused to hon[o]r or acknowledge the pending modification" between Bank of America and Galvagna. (Id. ¶¶ 1, 4).  The Court will dismiss Galvagna's breach-of-contract claim for two reasons.

 First, Galvagna fails to allege facts from which the Court can reasonably infer that Galvagna was an intended beneficiary of the Agreement.  Galvagna does not allege that he is a party to the Agreement.  Nevertheless, under Maryland law, he would be permitted to sue to enforce the terms of the Agreement if he were an intended—not an incidental—beneficiary. See CR-RSC Tower I, LLC v. RSC Tower I, LLC, 56 A.3d 170, 212 (Md. 2012).  A third party is an intended beneficiary of an agreement when the pertinent provisions in the agreement were inserted to benefit the third party or the third party is named in the operative agreement. Id.  Because Galvagna does not allege that he was personally named in the Agreement, he must plausibly allege that the Agreement's provision preventing the transfer of mortgage loans when a modification is pending was included to benefit mortgagors like him.  Galvagna does not attach the Agreement to the Complaint and his allegations regarding its terms are entirely conclusory and bereft of detail.  Without further factual enhancement, the Court cannot reasonably infer that the DOJ intended the Agreement to benefit borrowers like Galvagna whose loans were transferred nearly a year after the loans' originators offered loan modifications that the borrowers refused. Because Galvagna does not sufficiently allege that he is an intended beneficiary of the Agreement, the Court finds that he is not entitled to sue to enforce its terms. See CR-RSC Tower I, 56 A.3d at 212.

---

[5] Maryland substantive law applies to these claims because the Court is sitting in diversity jurisdiction and Galvagna's claims arose in Maryland. See Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

Second, Galvagna fails to plausibly allege that a loan modification was "pending" when Bank of America transferred the servicing of his loan to Nationstar.  Bank of America offered Galvagna a TPP in September 2012.  (ECF No. 1-4).  The offer letter plainly states that Galvagna's failure to make the TPP payments might render him ineligible for a loan modification.  (Id. at 4).  Galvagna does not allege that he made the TPP payments.  Instead, he asserts that in October 2012, he refused the TPP because he desired a "better" plan.  (Id. at 5).  Galvagna never alleges that after October 2012, Bank of America considered him for another TPP or an alternate loan modification plan.  So the Court cannot reasonably infer a loan modification was "pending" when Bank of America transferred Galvagna's loan to Nationstar.  Thus, even under the terms of the Agreement as alleged by Galvagna, the Court finds that Galvagna falls outside their scope.

Galvagna also alleges that Bank of America breached the Loan Modification Agreement it executed with Galvagna in September 2009 when notwithstanding the agreement, it foreclosed on the Property in November 2009.  Galvagna asserts that he and Bank of America "came to the agreement that the foreclosure breached [the Loan Modification Agreement]."  (Compl. ¶ 3).  That allegation, however, is riddled with legal conclusions that the Court need not, and will not, accept.  Iqbal, 556 U.S. at 678.  Defendants contend that this breach-of-contract claim is barred by the statute of limitations.  Generally, when resolving a Rule 12(b)(6) motion, the Court "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."  Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  But the Court may grant a Rule 12(b)(6) motion based on an affirmative defense when that defense clearly appears on the face of the complaint.  See id.  Here, Galvagna's Complaint is clear that the foreclosure that purportedly breached the Loan Modification Agreement occurred in November 2009—well outside Maryland's three-year statute of limitations for civil claims.  See Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-101 (West 2016).

Galvagna next avers Bank of America facilitated a "wrongful foreclosure" in November 2009 and then "damaged" the Property during the immediately succeeding five months when it possessed the Property.  Defendants argue that the Court should dismiss Galvagna's wrongful-foreclosure claim because Maryland does not recognize such a claim. The Court agrees.  See Davis v. Wilmington Fin., Inc., No. PJM-09-1505, 2010 WL 1375363, at *7 (D.Md. March 26, 2010) ("Plaintiffs cite no authority, and the Court can find none, that 'Wrongful Foreclosure' is a separate cause of action in Maryland.").

Defendants also argue that to the extent Galvagna alleges Bank of America was negligent in facilitating the November 2009 foreclosure and maintaining the Property immediately thereafter, Galvagna's claims are barred by the statute of limitations.  The Court concurs.  Galvagna's Complaint is clear that the foreclosure he challenges occurred in November 2009—which, again, is well outside the statute of limitations.  See CJP § 5-101.  Galvagna's Complaint is also clear that Bank of America possessed the Property between November 2009, when the foreclosure was finalized, and March 2010, when the foreclosure was vacated.  This five-month duration also falls far beyond the three-year statute of limitations.

Galvagna's final claim against Bank of America is one for fraudulent misrepresentation.  Galvagna alleges that when Bank of America foreclosed on the property in November 2009, it represented that Galvagna and his wife (the "Galvagnas") signed the deed of trust on March 6, 2007 in Anne Arundel County, Maryland.  (Compl. ¶ 5).  Galvagna contends that this was a "false statement" because in fact, the Galvagnas signed the deed of trust on February 23, 2007 in Wicomico County.  (Id.).  There are five elements of fraudulent misrepresentation:

> (1) that a representation made by the defendant was false; (2) that either its falsity was known to the defendant or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation but had the right to rely upon it with full belief in its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation.

Univ. Nursing Home, Inc. v. R.B. Brown & Assocs., Inc., 506 A.2d 268, 274 (Md.Ct.Spec.App. 1986) (quoting Appel v. Hupfield, 84 A.2d 94 (Md. 1951)). Galvagna fails to allege elements two through five. What is more, he does not meet Rule 9(b)'s heightened pleading standard because he fails to assert what Bank of America obtained by representing that the Galvagnas signed the deed of trust a month later and in a different county than Galvagna alleges. See Superior Bank, 197 F.Supp.2d at 313–14.

      Turning, finally, to Galvagna's claims against Nationstar, at first blush, it does not appear that Galvagna raises any. That alone is enough to dismiss Galvagna's Complaint as to Nationstar because without allegations, Galvagna cannot plausibly allege Nationstar is liable for any misconduct. To the extent Galvagna alleges in the fourth paragraph of his Complaint that Nationstar breached a loan modification agreement between Galvagna and Bank of America, such an assertion belies Galvagna's own allegations and fails as a matter of law. Galvagna alleges that "Nationstar refused to hon[o]r or acknowledge the pending modification." (Compl. ¶ 4) (emphasis added). He also asserts that Nationstar attempted to collect mortgage payments in accordance with "the 2009 modification that was never consummated." (Id.) (emphasis added). Thus, even Galvagna concedes that no loan modification had been finalized. Moreover, "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" Polek v. J.P. Morgan Chase Bank, N.A., 36 A.3d 399, 416 (Md. 2012) (quoting Cont'l Masonry Co. v. Verdel Constr. Co., 369 A.2d 566, 569 (Md. 1977)). Neither Galvagna's allegations nor the copious documents he attaches to his Complaint show that Nationstar had a contractual obligation to honor a loan modification that Galvagna executed.

      For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED (ECF No. 5). Galvagna's Motion for Summary Judgment (ECF No. 13) is DENIED as moot. Galvagna's Complaint (ECF No. 1) is DISMISSED. The Clerk is directed to update the case caption to reflect Nationstar's legal identity as "Nationstar Mortgage LLC," CLOSE this case, and mail a copy of this memorandum to Galvagna at his address of record. Despite the informal nature of this memorandum, it shall constitute an Order of this Court and the Clerk is directed to docket it accordingly.

      Very truly yours,

      /s/
      _____
      George L. Russell, III
      United States District Judge